SO ORDERED

SIGNED this 8 day of October, 2025.

_____
Pamela W. McAfee
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

ADAIR REALTY GROUP, LLC,

    DEBTOR

CASE NO.
25-00597-5-PWM
CHAPTER 7

_____

MELISSA TRAVIS,
f/k/a MELISSA LEIGH MAREK,

    PLAINTIFF,

    v.

ADAIR REALTY GROUP, LLC and
ROBIN SHEA ADAIR,

    DEFENDANTS.

ADV. PRO. NO.
25-00040-5-PWM

**ORDER ALLOWING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND SETTING DEADLINE TO FILE JOINT PRECONFERENCE REPORT**

The matters before the court are the motions filed by defendant Robin Shea Adair and by defendant Adair Realty Group, LLC by and through its chapter 7 trustee, George F. Sanderson III (the Trustee), to dismiss the amended complaint filed by the plaintiff, Melissa Travis (formerly known as Melissa Leigh Marek). A hearing took place on September 10, 2025, in Raleigh, North Carolina, at the conclusion of which the court took the matter under advisement. For the reasons

that follow, the Trustee's motion is denied, and Mr. Adair's motion is allowed in part and denied in part.

## PROCEDURAL BACKGROUND

Adair Realty Group, LLC (ARG) filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on February 18, 2025, and George F. Sanderson III was appointed Trustee. At the time of the filing, a civil action brought by Ms. Travis against ARG was pending in the Superior Court of Wake County, North Carolina, asserting claims under North Carolina General Statutes §§ 75-1.1, 75-16, and 75-121, an action to quiet title, an action to set aside a quitclaim deed, and a claim for unjust enrichment. Ms. Travis removed that action to this court on February 19, 2025, initiating this adversary proceeding. On March 26, 2025, Ms. Travis filed an amended complaint, adding Mr. Adair as a defendant and adding a claim for fraud. D.E. 13.

On July 2, 2025, Mr. Adair filed his motion to dismiss the Amended Complaint and accompanying memorandum pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this adversary proceedings by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure. D.E. 25, 26. Mr. Adair contends that this court lacks subject matter jurisdiction over the claims against him because it is not a proceeding arising under title 11 or arising in or related to ARG's bankruptcy case. D.E. 26 at 6. Mr. Adair also contends that the Amended Complaint fails to state a claim upon which relief may be granted for several reasons, including that fraud is not pled with particularity and that the claims against Mr. Adair would require the court to pierce the corporate veil as to ARG, a remedy that may only be pursued by the Trustee. *Id.* at 7.

On July 30, 2025, the Trustee filed his motion to dismiss the Amended Complaint and alternative motion for judgment on the pleadings pursuant to Rules 12(b)(1), 12(b)(6), 12(c), and

2

12(h)(3), D.E. 31, contending that Ms. Travis does not have standing to bring the claims and, thus, this court lacks subject matter jurisdiction. Specifically, as detailed more fully below, the Trustee contends that because Ms. Travis was previously in her own chapter 13 case, the claims asserted in the Amended Complaint are property of that bankruptcy estate.

## JURISDICTION

As noted above, the defendants contend that this bankruptcy court lacks subject matter jurisdiction. However, as explained below, the court finds both related-to jurisdiction and that the plaintiff has standing to pursue the claims asserted. Accordingly, this bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. With respect to defendant ARG, this is a statutorily core proceeding under 28 U.S.C. § 157(b)(1) that this court is authorized to hear and determine. The United States District Court for the Eastern District of North Carolina has referred this case and this proceeding to this court under 28 U.S.C. § 157(a) by its General Order of Reference entered on August 3, 1984. This order is not a final order, and the court's authority to enter final orders on all claims is not presently a matter that must be determined.[1] Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## ALLEGATIONS OF THE AMENDED COMPLAINT

In August 2015, Ms. Travis and her then-husband, Daniel Marek, purchased a home at 100 Apple Drupe Way, Holly Springs, North Carolina (the Property). D.E. 13 at 4, ¶ 15. The purchase was financed with a mortgage and secured by a deed of trust on the Property. *Id*. ¶ 16. The couple later divorced, and, pursuant to a property settlement agreement, Mr. Marek conveyed his entire interest in the Property to Ms. Travis through a quitclaim deed. *Id*. ¶¶ 17-18.

---

[1] The court acknowledges that Mr. Adair expressly does not consent to entry of final orders by this court.

3

Thereafter, Ms. Travis defaulted on the mortgage and faced foreclosure of the Property. *Id*. ¶¶ 19-20. In an effort to avoid foreclosure, Ms. Travis contacted Mr. Adair, member and manager of ARG, who marketed himself online as a real estate professional who could assist homeowners facing foreclosure. *Id*. at 4-5, ¶¶ 21-23. Ms. Travis and Mr. Adair discussed various options and then reached an agreement pursuant to which, in exchange for a 50% ownership interest in the Property, Mr. Adair would reinstate the mortgage by paying $29,344.62 to the lender, invest $10,000 in home renovations, and, after selling the Property at a higher price, split the proceeds with Ms. Travis. *Id*. at 7, ¶¶ 24-25, 28; 16, ¶ 114. Ms. Travis was to reside at the Property until its sale. *Id.* at 10, ¶ 60. On December 30, 2022, Ms. Travis met Mr. Adair at a UPS store and signed various documents, *id*. at 5, ¶ 27, including a quitclaim deed transferring a 50% interest in the Property to ARG, *id*. at 7, ¶ 36, with Ms. Travis retaining an interest as a tenant in common. *Id.* at 10, ¶ 61.  At the time of the transfer, the Property was Ms. Travis's principal residence. *Id.* ¶ 59.

Mr. Adair did not pay the reinstatement amount. *Id.* at 6, ¶ 31. Despite having promised to prevent the foreclosure, Mr. Adair allowed the foreclosure sale to occur on January 4, 2023. *Id*. at 8, ¶¶ 48, 50. On January 12, 2023, Ms. Travis filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code, Case No. 23-00091-5-PWM, after which the Wake County Clerk set aside the foreclosure order on January 13, 2023.[2] *Id*. at 9, ¶¶ 52-53. Less than a week after Ms. Travis's bankruptcy filing, Mr. Adair, without permission from the bankruptcy court, recorded the quitclaim deed conveying a 50% interest in the Property to ARG with the Wake County Register of Deeds. *Id*. ¶¶ 54, 55.

The mortgage company sought relief from the automatic stay in Ms. Travis's chapter 13 case, and, after the bankruptcy court granted that relief, the foreclosure proceeding resumed. *Id*.

---

[2] Ms. Travis's chapter 13 case was dismissed without discharge on March 11, 2024.

4

at 10, ¶¶ 67-68. The Property was sold for $400,050.00, *id*. at 11, ¶ 69, generating a surplus of $155,429.58. *Id.* ¶ 70. Because the quitclaim deed had been recorded, ARG received 50% of the surplus funds, or $77,714.79, on April 22, 2024. *Id*. ¶¶ 73-74 & Ex. H.

Based on these facts, Ms. Travis asserts several claims for relief against ARG and Mr. Adair jointly and individually. Specifically, Ms. Travis contends that the actions of ARG and Mr. Adair are part of an unlawful "foreclosure rescue transaction" governed by chapter 75 of the North Carolina General Statutes; that these acts subject them to liability for unfair and deceptive trade practices under § 75-1.1, entitling her to treble damages and attorneys' fees; that the quitclaim deed should be declared void and set aside; that both defendants were unjustly enriched; and that both defendants[3] are liable for fraud.

## DISCUSSION

I. **The Trustee's Motion to Dismiss and Alternative Motion for Judgment on the Pleadings for Lack of Standing**

As noted in the recitation of the factual allegations, Ms. Travis filed a petition for relief under chapter 13 of the Bankruptcy Code on January 12, 2023, to stay the foreclosure of the Property. Although her plan was confirmed, Ms. Travis defaulted on her plan payments and the chapter 13 case was dismissed without discharge on March 8, 2024. Ms. Travis's claims against ARG and Mr. Adair were not listed in Ms. Travis's schedules, nor were the claims disclosed at any time while the case was pending. The Trustee contends that the claims were property of the chapter 13 bankruptcy estate, and, as a result, Ms. Travis lacks standing to pursue those claims.[4]

---

[3] The Amended Complaint does not specify against which defendants the fraud claim is directed; however, the plaintiff seeks punitive damages against both defendants based on the fraud claim, suggesting that the fraud claim is asserted against both ARG and Mr. Adair.

[4] When a plaintiff lacks standing to bring claims, the court must dismiss the action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 78-79 (2013).

5

Instead, he maintains that she should reopen the chapter 13 case for the claim to be pursued and any resulting assets to be administered by the chapter 13 trustee.

The Trustee's contention rests on the fact that prepetition causes of action are property of a bankruptcy estate, 11 U.S.C. § 541(a)(1); *see also Cusano v. Klein,* 264 F.3d 936, 945 (9th Cir. 2001), and that a trustee generally has authority to administer property of the estate to the exclusion of the debtor. That administration of estate property includes controlling litigation of prepetition claims. The Trustee acknowledges that under § 554 of the Bankruptcy Code, scheduled property "not otherwise administered at the time of the closing of a case is abandoned to the debtor[,]" 11 U.S.C. § 554(c), but he emphasizes that unscheduled or undisclosed property is not abandoned. *Id.* § 554(d). Instead, "undisclosed property remains property of the estate even after the bankruptcy case is closed." *Miller v. Gilliam*, BAP No. CC-18-1267-SFL, 2019 Bankr. LEXIS 761, at *9 (9th Cir. B.A.P. Mar. 11, 2019). For this reason, the Trustee contends that the claims in this adversary proceeding have not been abandoned and remain property of the chapter 13 bankruptcy estate.

In response, Ms. Travis contends first that the claims asserted in the Amended Complaint were not property of her chapter 13 estate because those claims did not arise prepetition. She maintains that the fraudulent scheme continued throughout her chapter 13 case, and the harm necessary to trigger the cause of action occurred only after her case was dismissed and the Property foreclosed. She next contends that property of the estate is treated differently when a case has been dismissed, relying on *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 484 (2d Cir. 2014). Under § 349, the dismissal of a case "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title." 11 U.S.C. § 349(b)(3); *see also In re McGregor*, No. 15-05635-5-JNC, 2016 WL 4733096, at *3 (Bankr. E.D.N.C. Sept. 9, 2016) ("[U]pon the dismissal of a bankruptcy case, 11 U.S.C. § 349(b) rolls back

6

the clock and the parties' relative rights in estate property existing as of the minute before a bankruptcy petition's filing are reinstated."). Because the court finds the second argument to be dispositive of the issue, it need not determine whether the claim accrued pre- or postpetition.

The *Crawford* case offers a persuasive examination of the interplay between §§ 554 and 349 on nearly identical facts and arguments. *See* 758 F.3d at 483-85. In *Crawford*, the plaintiff alleged that "foreclosure rescuers" fraudulently obtained a mortgage on her home and pursued foreclosure. *Id.* at 477-78. The plaintiff filed for relief under chapter 13, but her case was dismissed for failure to make plan payments. *Id.* at 479. The plaintiff then brought a fraud claim against the defendants, who responded that she lacked standing to bring the claim because she had not scheduled the claims during her bankruptcy case. *Id.* at 480.

The Second Circuit determined that while both §§ 554 and 349 are applicable to all bankruptcy cases, § 349 controlled due to the dismissal of the plaintiff's chapter 13 case. *Id.* at 484. The circuit court described the effects of dismissal as broad, noting that § 349 "makes no distinction between those [assets] that were listed in the debtor's schedule of assets and those that were not." *Id.* The court found this reading of § 349 to be reinforced by recorded Congressional intent "'to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case.'" *Id.* at 485 (quoting H.R. Rep. No. 95–595, at 338 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6294). Because a bankruptcy is unwound by a dismissal, there is no longer any property of the estate. *Id.* Section 554 hinges on the existence of an estate; with no property of the estate, § 554 is rendered inapplicable by a dismissal. *Id.*

The Trustee contends that the *Crawford* case fails to properly consider the plain language of § 554 (as discussed in *Miller*) that unscheduled property remains "property of the estate even

7

after the bankruptcy case is closed." 2019 Bankr. LEXIS 761, at *8-9. However, the difference in a *closed* chapter 7 case and a *dismissed* chapter 13 case is significant. Here, Ms. Travis's creditors were restored to the same position they held prior to the filing of her chapter 13 case. There was no reliance on administration of assets in the chapter 13 case, nor were any claims discharged. There is no estate to reopen for distribution of additional assets to creditors. Further, there is no prejudice to Ms. Travis's creditors: unlike in a closed chapter 7 case, creditors did not receive a distribution based on fewer than all assets of the estate and there is no discharge injunction precluding creditors from attempting to share in any new or undisclosed assets.

The court finds *Crawford* to be persuasive and analogous authority, supported by congressional intent, that dismissal restores all property rights to the same entity that held those rights immediately prior to the filing of a bankruptcy petition, and concludes that § 349 controls when a chapter 13 case is dismissed without discharge. Any property of Ms. Travis's bankruptcy estate, including unscheduled claims against Mr. Adair and ARG, reverted to her upon the dismissal of her chapter 13 case on March 8, 2024. Consequently, Ms. Travis has standing to bring the claims asserted in the Amended Complaint, and the Trustee's motion to dismiss and alternative motion for judgment on the pleadings is DENIED.

## II.     Mr. Adair's Motion to Dismiss

### A.     Subject Matter Jurisdiction

#### i.     Statutory Jurisdiction

Mr. Adair contends that this court lacks subject matter jurisdiction over the claims asserted against him, requiring dismissal of the Amended Complaint. Subject matter jurisdiction is "'jurisdiction over the nature of the case, the type of relief sought, or the extent to which a court can rule on the conduct of persons or the status of things.'" *In re Parker*, 581 B.R. 468, 475 (Bankr.

E.D.N.C. 2018) (quoting BLACK'S LAW DICTIONARY (10th ed. 2014)). The party alleging bankruptcy court jurisdiction has the burden of proving the court's jurisdiction over the matter in dispute. *In re C.R. Peele Const. Co., Inc.*, No. 10-05232-8-RDD, 2013 WL 944924, at *3 (Bankr. E.D.N.C. Mar. 11, 2013). If the party fails to prove the existence of subject matter jurisdiction, then the party's action, upon proper motion, will be dismissed. *See* Fed. R. Civ. P. 12(b)(1).

Bankruptcy courts have jurisdiction over three types of civil proceedings: those that (1) arise under title 11, (2) arise in a title 11 case, or (3) are related to a title 11 case. *See* 28 U.S.C. § 1334(b). A proceeding arises under title 11 if it invokes a substantive right created by the Bankruptcy Code. *In re Newell*, 424 B.R. 730, 733 (Bankr. E.D.N.C. 2010) (citation omitted). A proceeding arises in a case under title 11 when it would have no practical existence but for the bankruptcy case. *Id*. at 734. There is no dispute that the claims raised in this case neither arise under title 11 nor arise in a case under title 11.

A proceeding is "related to" a case under title 11 if its outcome "could conceivably have any effect on the estate being administered in bankruptcy." *Owens-Ill., Inc. v. Rapid Am. Corp. (In re Celotex Corp.)*, 124 F.3d 619, 625 (4th Cir. 1997). In determining "related to" jurisdiction, it is appropriate for the court to consider whether resolution of Ms. Travis's claims against Mr. Adair would impact the amount of her claim against the estate and the resultant dividend to be paid to other creditors, which would "obviously affect[] the administration of the estate." *See Burns v. First Citizens Bank & Tr. Co. (In re Rainbow Sec. Inc.)*, 173 B.R. 508, 512 (Bankr. M.D.N.C. 1994).

Ms. Travis contends that this expansive test for related to jurisdiction is satisfied because her claims, if successful, would impose joint and several liability against ARG and Mr. Adair. Courts have found a conceivable effect on the estate under precisely these circumstances. *See In*

*re First All. Mortg. Co.*, 269 B.R. 449, 454 (C.D. Cal. 2001) ("Here, the suits . . . are 'related to' the bankruptcy proceeding because [debtor defendant] and [non-debtor defendant] could become joint and severally liable for the damages in those cases. The estate's liability could be reduced if the plaintiffs in the State Court Actions are successful."); *In re MBM Ent., LLC*, 531 B.R. 363, 379 (Bankr. S.D.N.Y. 2015) ("At various other points [plaintiff] suggested more generally that the Defendants share 'joint and several liability' for all of the wrongs she alleged. Those contentions establish that all of [plaintiff's] claims are 'related to' the Chapter 11 Debtors and the pending Chapter 11 cases."); *In re Wood,* 825 F.2d 90, 94 (5th Cir. 1987) ("The plaintiff has filed one complaint against the defendants seeking liability for their joint conduct. Success against any of the defendants will have a potential effect on the estate. For example, if [the debtor is] held liable but Barham [the non-debtor defendant] is not, the bankrupt estate may bear the entire burden of the judgment. If, on the other hand, Barham is found jointly liable, the estate may bear only a portion of the judgment.").

Mr. Adair contests "related to" jurisdiction, contending that a common factual nexus is insufficient to confer jurisdiction on this basis. Mr. Adair also relies on *In re Somerset Props. SPE, LLC*, No. 10-09210-8-SWH, 2012 WL 3877791, at *5 (Bankr. E.D.N.C. Sept. 6, 2012). In *Somerset*, the debtor's lenders brought claims against a non-debtor for breach of state law duties that the individual owed to the debtor company. *Id.* The court determined that the lenders' claims were not related to the debtor company's bankruptcy because the issue of the non-debtor's liability was entirely independent of the bankruptcy, and, thus, there was "no possibility that a ruling regarding the claims against [the non-debtor] would impact the bankruptcy estate." *Id.* There was no allegation of joint and several liability shared between the debtor company and the non-debtor defendant for harm to the plaintiffs. Accordingly, *Somerset* is distinguishable and is not persuasive

10

on the issue as it arises in this adversary proceeding because, unlike the claims before this court, the claims against the debtor and non-debtor would result in entirely independent liability.

In the Amended Complaint, Ms. Travis alleges that both ARG (the debtor) and Mr. Adair (a non-debtor) are jointly and severally liable for the harm she suffered. In other words, both defendants are alleged to be joint participants in a single scheme that had the express goal of and resulted in defrauding Ms. Travis of a 50% ownership interest in the Property. Liability is not limited to the entity that ultimately benefitted financially; however, Ms. Travis's damages are finite and may only be recovered once. If Mr. Adair is adjudicated liable for any of Ms. Travis's claims, then any payment by Mr. Adair on the judgment would necessarily reduce Ms. Travis's claim against the ARG bankruptcy estate. This is more than a shared factual nexus. This potential impact satisfies the "any effect" test for related to jurisdiction. The possibility of joint and several liability ensures that the claims against Mr. Adair can never be wholly independent of ARG's bankruptcy because any ruling and recovery against Mr. Adair would impact ARG's bankruptcy estate.

The court concludes that the likelihood of joint and several liability against ARG and Mr. Adair is sufficient to confer "related to" jurisdiction over these claims. Accordingly, the motion to dismiss for lack of subject matter jurisdiction is DENIED.

### ii. Standing

Mr. Adair also contends that Ms. Travis's claims against him rely on theories of shareholder liability or piercing the corporate veil of ARG. Although Mr. Adair makes this argument in support of his motion under Rule 12(b)(6), it is a standing argument more appropriately considered under Rule 12(b)(1). Because piercing the corporate veil to reach a shareholder's assets for payment of corporate liabilities should inure to the benefit of all creditors, and not just one, veil piercing or alter ego claims typically fall exclusively within the province of

11

the Trustee. *See Holcomb v. Pilot Freight Carriers, Inc.*, 120 B.R. 35, 41-42 (M.D.N.C. 1990). Relying on that general principle, Mr. Adair contends that Ms. Travis does not have standing to bring those claims. However, a careful reading of the Amended Complaint demonstrates that Ms. Travis does not rely on piercing the corporate veil, but instead asserts claims for which Mr. Adair is personally liable for his own conduct.

Specifically, Ms. Travis alleges that Mr. Adair is personally liable for a violation of North Carolina General Statutes § 75-121, which makes it unlawful for "a person or entity . . . to engage in, promise to engage in, arrange, offer, promote, solicit, assist with, or carry out a foreclosure rescue transaction for financial gain. . ." N.C. Gen. Stat. § 75-121(a). In other words, anyone, regardless of their legal or natural personhood, is personally liable for engaging in or promoting these unlawful transactions. *See id*. Here, the Amended Complaint alleges that Mr. Adair directly engaged in a foreclosure rescue transaction by promoting himself online as a professional who assists people facing foreclosure and by inducing Ms. Travis to transfer a 50% interest in the Property to ARG. Thus, under the plain language of the statute, if the allegations in the Amended Complaint are proven, Mr. Adair would be personally liable for participating in an unlawful foreclosure rescue transaction regardless of his connection to ARG.

In sum, the Amended Complaint does not rely on theories of vicarious liability for Mr. Adair, nor does it contain allegations that Mr. Adair and ARG operated as one entity. At the hearing, the Trustee confirmed that he also did not view Ms. Travis's theories of liability to rely on veil piercing or alter ego allegations, noting that while the estate might have claims against Mr. Adair arising from the factual allegations in the Amended Complaint, shareholder liability was not one of the claims he had identified.

Because the Amended Complaint does not allege liability based on legal claims that are exclusively claims of the estate, the motion to dismiss for lack of standing is DENIED.

**B.     Legal Sufficiency of the Claims Alleged**

In addition to his challenges to this court's jurisdiction, Mr. Adair contends that the Amended Complaint fails to state a claim upon which relief may be granted. Specifically, he contends that the fraud claim should be dismissed because it has not been pled with particularity; the unjust enrichment claim should be dismissed because there is no allegation he retained a benefit; and the North Carolina General Statutes § 75-121 claim should be dismissed because the statute does not apply to "isolated real estate transactions."

Rule 8(a)(2) of the Federal Rules of Civil Procedure (made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7008) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." If a complaint fails to meet this threshold obligation, the action should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For purposes of Rule 12(b)(6), all allegations of fact contained in a complaint must be accepted as true. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

In *Bell Atlantic Corp. v. Twombly*, the Supreme Court held that a complaint must include "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007). The Court elaborated in *Ashcroft v. Iqbal* that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and that "only a complaint that states a plausible claim for relief survives a motion to dismiss." 556 U.S. 662, 678-79 (2009). The allegations must be more than a "formulaic recitation of

13

the elements" of a claim. *Id.* at 681 (citations omitted). Fraud claims must meet a higher pleading burden; claims for fraud must be pled with particularity regarding the circumstances of the alleged fraud, but conditions of a person's mind, like intent or knowledge, may be averred generally. Fed. R. Civ. P. 9(b); *see also Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999).

In assessing the motion to dismiss for failure to state a claim, the court considers all factual allegations in Ms. Travis's Amended Complaint as true, draws all reasonable inferences in Ms. Travis's favor, and considers whether the Amended Complaint contains sufficient factual allegations to state a claim for relief that is plausible on its face. The court may consider, in addition to the factual allegations contained in the Amended Complaint, documents attached to the Amended Complaint and documents on the public record.

### i.   Violation of North Carolina General Statutes § 75-1.1

The Amended Complaint alleges that both defendants engaged in a foreclosure rescue transaction[5] for financial gain and with the expectation of financial gain, subjecting them to liability for an unfair or deceptive trade practice under chapter 75 of the North Carolina General Statutes. *See* N.C. Gen. Stat. § 75-122. A person or entity is liable if they engage in, promise to engage in, or promote these unlawful transactions. *See id.* § 75-121(a). While unfair trade practice liability does not apply to a business's internal operations, it does apply "to interactions between market participants." *White v. Thompson*, 364 N.C. 47, 53, 691 S.E.2d 676, 680 (2010).

---

[5] An unlawful foreclosure rescue transaction is defined as a transfer of residential real property that includes the following elements: (1) the real property is the principal place of residence of the transferor, (2) "[t]he transferee, an agent of the transferee, or others acting in concert with the transferee make representations that the transfer of the residential property will enable the transferor to prevent, postpone, or reverse the effect of foreclosure and to remain in the residence," and (3) the transferor retains a tenancy interest. N.C. Gen. Stat. §§ 75-120(3)(a)-(d).

The Amended Complaint sufficiently alleges that Mr. Adair promoted and engaged in the foreclosure rescue transaction at issue. However, Mr. Adair contends that the Amended Complaint fails as a matter of law because, according to *White v. Thompson*, North Carolina General Statutes § 75-121 does not apply to "isolated real estate transactions." *See* D.E. 26 at 8. *White* does not support this argument. Instead, *White* stands for the proposition that chapter 75 generally applies to interactions between market participants, even isolated interactions, as opposed to internal business operations. Here, the allegations relate to a specific prohibited activity, a foreclosure rescue transaction, that the North Carolina General Assembly deemed to violate chapter 75. Even if Mr. Adair's reliance on *White* supported his general argument about the applicability of chapter 75 on its own terms, the specific incorporation of violations of § 75-121 into chapter 75 would override the general rule. Accordingly, the Amended Complaint states a claim upon which relief may be granted, and Mr. Adair's motion to dismiss the chapter 75 claim is DENIED.

      **ii.**    **Unjust Enrichment**

Mr. Adair contends that the Amended Complaint fails to state a claim for unjust enrichment against him because it does not allege that he individually benefitted from the transaction. An essential element of an unjust enrichment claim is that the plaintiff must allege that a benefit was conferred on a defendant. *See Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 417, 537 S.E.2d 248, 266 (2000).

The court agrees that Ms. Travis's unjust enrichment claim against Mr. Adair suffers from a fatal defect in that she did not allege that a benefit was conferred upon Mr. Adair. Instead, she alleged that, by obtaining a 50% interest in the Property, ARG, and not Mr. Adair individually, received various benefits. Because there is no allegation to support an essential

15

element of the claim, the unjust enrichment claim against Mr. Adair is dismissed. However, the court will grant leave to amend if Ms. Travis is aware of facts to support that Mr. Adair was unjustly enriched by the actions alleged.

### iii. Fraud

Finally, Mr. Adair contends that the Amended Complaint does not identify any specific fraudulent act by Mr. Adair individually because the allegations are directed at ARG, not Mr. Adair in his personal capacity. Mr. Adair contends that this fails to satisfy the heightened pleading requirement of Rule 9(b).

Across eighteen pages in the Amended Complaint, Ms. Travis described the factual circumstances surrounding Mr. Adair's alleged fraudulent conduct in sufficient detail—noting, among other relevant facts, the identities of the parties, the practical mechanics of the alleged fraud, the allegedly false representations made by Mr. Adair, the location where the alleged fraud was consummated, and the harm she suffered as a direct and proximate result of Mr. Adair's alleged fraud. The specific allegations in paragraphs 114-121 of the Amended Complaint refer only to Mr. Adair's individual representations and actions, and do not allege that those representations were made on behalf of ARG. *See* D.E. 13 at 16-17. Additionally, Ms. Travis generally averred Mr. Adair's fraudulent intent and his knowledge that the representations he made about saving the Property from foreclosure were false. The court finds that Ms. Travis pled her fraud claim against Mr. Adair with particularity as required by Rule 9(b), and the motion to dismiss the fraud claim is DENIED.

**CONCLUSION**

Because the court finds that Ms. Travis, and not a chapter 13 trustee, is the proper party in interest to pursue the claims in the Amended Complaint against Mr. Adair and ARG, the Trustee's motion to dismiss and alternative motion for judgment on the pleadings is DENIED.

Because the court finds that the claims brought against Mr. Adair in the Amended Complaint are related to ARG's bankruptcy case, Mr. Adair's motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is DENIED.

Because the Amended Complaint alleges facts that, taken as true, are sufficient to state the claims for fraud and under North Carolina General Statute § 75-121, Mr. Adair's motion to dismiss pursuant to Rule 12(b)(6) on those claims is DENIED.

Finally, with respect to the unjust enrichment claim, because the Amended Complaint does not allege that Mr. Adair benefitted personally from the transaction, the motion to dismiss the claim for unjust enrichment is ALLOWED with leave to amend. If Ms. Travis wishes to amend the Amended Complaint to re-plead her claim for unjust enrichment, she may file a second amended complaint within 14 days from the date of this order. The parties are directed to submit a joint preconference report 28 days from the date of this order.

**END OF DOCUMENT**